## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN FRANCIS QUINN, | : | |
| | : | |
| Plaintiff, | : | No. 3:20-cv-00813 |
| | : | |
| v. | : | (SAPORITO, M.J.) |
| | : | |
| ANDREW SAUL, Commissioner | : | |
| Of Social Security, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM</u>

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's final decision denying John Francis Quinn's claim for disability insurance benefits under Title II of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9; Doc. 10).

For the reasons stated herein, the Commissioner's decision will be affirmed.

## I.    *Procedural Background*

Quinn is an adult individual born May 3, 1965, who was 51 years

old at the time of his alleged onset date of disability—March 20, 2017. (Tr. 15). Quinn's age at the onset date makes him a "person closely approaching advanced age" under the Social Security Act. *See* 20 C.F.R. § 404.1563(c).

On May 9, 2017, Quinn protectively filed for disability insurance benefits pursuant under Title II of the Social Security Act. (Tr. 15). Quinn's claim was initially denied on July 27, 2017. (Tr. 15). Thereafter, Quinn filed a timely request for an administrative hearing on August 8, 2017. His request was granted. (*Id*.). Quinn appeared and testified before Administrative Law Judge ("ALJ") Gerry Langan, on September 17, 2018, in Wilkes Barre, Pennsylvania. (Tr. 15, 35). In addition, impartial vocational expert ("VE") Patricia Chilleri appeared and testified during the administrative hearing. (Tr. 15, 52). Robert P. Frantz, Esquire, represented Quinn throughout the hearing.

On February 5, 2019, the ALJ issued an unfavorable decision in which he concluded that, after consideration of the entire record, Quinn has the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) with limitations. (Tr. 18). Quinn then filed a timely complaint on February 13, 2020, in this court. (Doc. 1). The

Commissioner's timely answer to the complaint was filed April 16, 2020 in which he maintained that the ALJ's decision was correct and in accordance with the law and regulations. (Doc. 16). This matter has been fully briefed by the parties and is ripe for decision. (Doc. 18; Doc. 21).

## II. *Factual Background*

At the time of the hearing, Quinn lived in St. Clair, Pennsylvania, which is in the Middle District of Pennsylvania. He has a high school education. (Tr. 38). Quinn has been unable to work since he was involved in a motor vehicle accident in March 2017. (Tr. 38).

At his administrative hearing, Quinn stated that he was a heavy equipment operator for most of his life. (Tr. 38). Quinn stated that he possesses an active CDL license. He worked as a cement truck driver, ran heavy equipment, drove heavy equipment, and performed lifting up to 200 pounds. (Tr. 41). In addition, he was responsible for cleaning the tracks and rails of the heavy equipment. (Tr. 42).

Quinn stated that he is unable to stay on his feet more than one-half hour before he has to sit down. He has pain that radiates from his lower left back to his lower right back and then into his right hip and down his right leg. (Tr. 44). Quinn stated that he has tried riding as a

passenger with his brother in the heavy equipment, but he could not do it because the bouncing in the vehicle was too much for him. (Tr. 44). Quinn stated he is unable to bend over to pick anything up. (Tr. 44).

Quinn testified that he could walk for a block if he went slow before having to stop and sit down. (Tr. 45). He stated he uses a cane about 75% of the time when walking because the cane helps to take the pressure off his spine and hip. He stated he could sit for one-half hour, depending on the chair. He stated that he has a reclining chair at home that he is able to sit on for extended periods of time and he is able to sleep in the chair. (Tr. 45). He stated that he is most comfortable reclined with his feet up because it takes the pain away. (Tr. 50). He stated he could lift and carry ten pounds comfortably. Quinn stated that if he does laundry, he is only able to come up the stairs once with a laundry basket full of clothes.

Quinn stated that he has a driver's license and does some driving. He stated that he got a ride to the hearing because it was too far for him to drive and especially when he takes his medications, his head gets fuzzy. (Tr. 47).

Quinn stated that his hobbies included trout fishing for which he previously travelled all over the United States, but now he is afraid to go

now. (Tr. 48). He stated that he does not have a computer or use the internet.

Quinn stated he gets approximately three to five hours of sleep a night and takes naps during the day. (Tr. 48). He stated that the only side effects from medication is that it puts him in a fog. (Tr. 49). He stated he uses a TENS unit, but he feels it no longer works as good as it once did.

Quinn stated that he suffers from a low blood platelets disorder and his hematologist told him he is a high-risk candidate for any type of invasive treatment. (Tr. 51). Quinn stated that he did a 12-week treatment of Harvoni and is now cured of hepatitis C. (Tr. 46).

In a function report dated June 30, 2017, Quinn stated that he is able to care for his own personal needs and he does not need reminders to take medication. (Tr. 171-72). He is able to prepare his own meals and he is able to vacuum, do laundry, and do light mowing. Quinn stated that he is able to drive and walk on his own, he is able to grocery shop, pay bills, and handle a checkbook. (Tr. 173). He stated that he enjoys watching television. He also enjoys fishing and auto racing, but he is reluctant to go in case he falls. He indicated that he visits his parents

daily and at the time of completion of the function report, he attended daily physical therapy sessions. Quinn stated that he is able to follow spoken instruction well, but he has difficulty with written instructions. He gets along well with authority figures, but his attention is compromised by his pain level. He is able to handle stress most of the time and he is able to handle changes in routine. Quinn indicated a fear of falling when walking. (Tr. 174-76).

## III.   *Legal Standard*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence

is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts.");

*see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity[2] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *Id.* § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a).

The Commissioner follows a five-step sequential evaluation process

---

[1] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *Id.* § 1382c(a)(3)(D).

[2] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; *id.* § 416.910.

in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[4] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a); *Id.* § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *Id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512; *Id.* § 416.912; *Mason*, 994 F.2d at 1064. Once the

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1); *id.* § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2); *id.* § 416.945(a)(2).

claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Id.* § 416.912(f); *Mason*, 994 F.2d at 1064.

## IV.   *The ALJ's Decision*

In his February 5, 2019, written decision denying Quinn's claims, the ALJ found that Quinn meets the insured status requirements of the Social Security Act through December 31, 2021. (Tr. 17). At step one, the ALJ found that Quinn had not engaged in substantial gainful activity since March 20, 2017, his alleged onset date. (Tr. 17). At step two, the ALJ found that Quinn had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the cervical spine, hepatitis C, and obesity. (Tr. 17). At step three, the ALJ found that Quinn does not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Quinn's RFC. After evaluating the relevant evidence of record, the ALJ found that Quinn had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), with the following limitations:

> He should avoid unprotected heights. He is able to frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can tolerate occasional exposure to extreme cold temperatures and wetness. He should avoid occupations in the food preparation and heath care industries.

(Tr. 18).

In making his factual findings with respect to Quinn's RFC, the ALJ was required to evaluate all symptoms and to the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and Social Security Ruling 16-3p. The ALJ also considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §404.1520c. (Tr. 18).

At step four of the five-step process, the ALJ determined that Quinn was unable to perform his past relevant work as a heavy equipment operator in the mining industry, which was classified as medium skilled

work with an SVP of 6 and considered very heavy and heavy exertional levels as performed by Quinn. His prior job as a concrete truck driver in the construction industry was SVP of 4 and considered heavy and very heavy exertional levels as performed by Quinn. As required by Social Security Ruling 82-62, this work was substantial gainful activity, was performed long enough for Quinn to achieve average performance and was performed within the relevant period. The ALJ determined that Quinn is capable only of performing light work, with additional limitations as previously described. Therefore, he is unable to perform his past relevant work as actually or generally performed.

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education, and past work experience. *Rossi*, 602 F.2d at 57.

According to the testimony given by the vocational expert, a

significant number of jobs exist in the national economy for an individual of Quinn's age, education, work experience, and RFC as determined by the ALJ. (Tr. 27, 54). Thus, at step five, after considering the testimony by the VE, the ALJ determined that Quinn would be able to perform the requirements of representative occupations such as: warehouse checker, DOT #222.687-010, with 40,000 jobs available nationally; gasket inspector, DOT # 739.687-102, with 38,000 jobs available nationally; marker and labeler, DOT #209.587-034, with 95,000 jobs available nationally. (Tr. 27). The above listed occupations are all classified as unskilled work at the light exertional level. (Tr. 27, 54). Based on this information, the ALJ concluded that Quinn could engage in work that existed in significant numbers in the national economy despite his medically determinable impairments.

## V. *Discussion*

The plaintiff contends that the ALJ's decision denying his claim for disability benefits is not supported by substantial evidence because the ALJ erred by failing to accord "controlling weight" to the opinions of two of Quinn's treating medical sources, assigning them "little weight" instead, while at the same time according "great weight" to the prior

administrative medical finding of a DDS medical consultant who did not examine him. In addition, the plaintiff suggests that the ALJ erred by failing to acknowledge as a severe impairment a diagnosis of lumbar facet syndrome recorded by one of his treating physicians.

The ALJ accorded little weight to the opinion of Robert W. Mauthe, M.D., a board-certified physiatrist[5] who examined the plaintiff on two occasions in March and April 2018.[6] Based on these two encounters and other medical records, and at the request of Quinn's attorney, Dr. Mauthe prepared a written report dated May 9, 2018. Dr. Mauthe noted that, at the time of his most recent examination of the claimant on April 19, 2018, Quinn had remained symptomatic, despite having received chiropractic care and physical therapy in the several months following his injury in a motor vehicle accident. Dr. Mauthe noted that Quinn had been taking tramadol, he had recently tried Topamax, and he had experienced no

---

[5] A physiatrist is a medical doctor who specializes in physical medicine and rehabilitation.

[6] In his brief, Quinn expressly characterizes Dr. Mauthe as a *treating* physician with whom he shared a "longstanding" relationship, notwithstanding this very limited treatment history. In light of the new regulations, which eliminated the hierarchical form of review in which the opinion of a treating physician was entitled to special deference, the "treating physician" nomenclature in particular is immaterial.

improvement with gabapentin. Physical examination revealed tenderness in the lumbar spine at L4-5 and L5-S1, with no obvious weakness. Dr. Mauthe opined that Quinn continued to experience low back pain due to a "[w]orking diagnosis [of] lumbar facet syndrome (sprain/strain phenomenon) as a direct result of the trauma sustained" in the motor vehicle accident, and he had been unable to return to work due to this severe back pain. Based on the duration of Quinn's complaints of low back pain and an inability to receive spinal injection treatments due to other conditions, Dr. Mauthe opined that Quinn's impairment was permanent. Dr. Mauthe recommended functional capacity testing be conducted, but he did not articulate any functional limitations himself in his report. (Tr. 661–63). The ALJ assigned "little weight" to Dr. Mauthe's opinion, noting that, although he had examined Quinn, the doctor had a "very short history with the claimant," his opinion was "not completely consistent with his own findings, which included lumbar spine tenderness but no obvious weakness," and his opinion "did not provide a specific, function-by-function assessment of the claimant's ability to perform work related tasks transferable to a residual functional capacity assessment for disability purposes." (Tr. 25).

The plaintiff contends that Dr. Mauthe's opinion is entitled to "controlling weight" as a medical opinion by a treating source that is well-supported by the medical evidence of record. "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly[7] and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medially acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in

---

[7] Indeed, we note that, under the prior regulations that did permit assignment of controlling weight to properly supported treating medical source opinions, PA Mummey's opinions would have been entitled to consideration but no special weight at all, as a physician assistant was not an "acceptable medical source" under those regulations. *See Thomas v. Comm'r Soc. Sec.*, 819 Fed. App'x 90, 92 (3d Cir. 2020); *Forster v. Colvin*, 208 F. Supp. 3d 636, 646 (M.D. Pa. 2015); 20 C.F.R. § 404.1502(a)(8) (providing that licensed physician assistants are "acceptable medical sources" only for claims filed after March 27, 2017); Soc. Sec. Ruling 06-3p, 2006 WL 2329939 (discussing evaluation of physician assistant opinions as evidence from "other sources" rather than as medical opinions).

the record." *Michelle K. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ____, 2021 WL 1044262, at *3 (W.D. Pa. Mar. 19, 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 2021 WL 1172982, at *7–*8; *Michelle K.*, 2021 WL 1044262, at *3. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the

frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 2021 WL 1044262, at *3; *see also* 20 C.F.R. § § 404.1520c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 2021 WL 1044262, at *3; *compare* 20 C.F.R. § 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with id.* § 404.1527(c)(3) (supportability), and *id.* § 404.1527(c)(4) (consistency).[8] An ALJ is specifically required to address

---

[8] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

these two factors in his or her decision. *See* 20 C.F.R. § 1520c(b)(2); *see also Densberger*, 2021 1172982, at \*8; *Michelle K.*, 2021 WL 1044262, at \*4. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 2021 WL 1044262, at \*4; *see also* 20 C.F.R. § 1520c(b)(2); *Densberger*, 2021 WL 1172982, at \*8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at \*8; *see also* 20 C.F.R. § 1520c(b)(3); *Michelle K.*, 2021 1044262, at \*4.

Under this new regulatory scheme, the plaintiff's contention that Dr. Mauthe's opinion is entitled to "controlling weight" is clearly meritless because the treating physician rule upon which he relies had been eliminated before he filed his claim for benefits with the agency. Moreover, in reviewing the ALJ's decision and the administrative record, it is clear that the ALJ considered each of the pertinent factors in evaluating the persuasiveness of Dr. Mauthe's opinion. The ALJ found Dr. Mauthe's opinion that Quinn was permanently unable to work due to low back pain was inconsistent with—and not supported by—the doctor's

own examination findings, which reveled lumbar spine tenderness but no obvious weakness. The ALJ found that Dr. Mauthe's opinion that Quinn was permanently unable to work was not supported by a functional assessment of Quinn's ability to perform work-related tasks. The ALJ also articulated his consideration of Dr. Mauthe's "very short history" with Quinn, whom he had only recently examined on two occasions. [9]

---

[9] The plaintiff also complains, albeit only in passing, that the ALJ failed to explicitly acknowledge Dr. Mauthe's working diagnosis of lumbar facet syndrome as a severe impairment. (*See* Doc. 18, at 5). First, we note that, at step two of the five-step sequential evaluation process, the ALJ found that Quinn had multiple severe impairments— degenerative disc disease of the lumbar spine, degenerative joint disease of the cervical spine, hepatitis C, and obesity—and continued on to step three. Thus, the ALJ's failure to include lumbar facet syndrome among Quinn's several expressly identified severe impairments was harmless error, at most. *See Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007); *Welling v. Saul*, No. 3:19-cv-00018, 2020 WL 1950456, at *8 (M.D. Pa. Feb. 7, 2020). Moreover, the ALJ credited Quinn's degenerative disc disease of the lumbar spine as a severe impairment, devoted eight single-spaced pages to a thorough discussion of Quinn's lower back impairment and medical evidence related to it, and reduced Quinn's residual functional capacity based on this impairment. Although the ALJ may not have mentioned each medical term used to describe Quinn's symptoms, it is clear that the ALJ credited him with having a severe impairment related to his lumbar spine, with associated radiating pain but no weakness or other deficits of significance. *See Walker v. Astrue*, Civil Action No. 2:07-cv-00411, 2008 WL 4181369, at *3, *8–*9 (S.D.W. Va. Sept. 8, 2008).

The ALJ accorded little weight to the opinion of Kyle M. Mummey, PA-C, Quinn's primary care provider who saw him on a monthly basis following his injury in a motor vehicle accident in March 2017. Following a March 24, 2017, encounter, Mummey stated in his treatment notes: "Patient unable to complete job duties. Recommend off work x4 weeks and recheck at that time." (Tr. 229). Following an April 7, 2017, encounter, Mummey stated in his treatment notes: "Patient unable to work for next two weeks. Recheck in office at that time." (Tr. 752). Following a June 21, 2017, encounter, Mummey stated in his treatment notes: "Patient unable to complete job duties currently. Recheck 4 weeks." (Tr. 806). On October 30, 2017, Mummey completed a disability form at the request of Mummey's private disability insurer, stating that, based on his most recent visit on October 16, 2017, Quinn was unable to work from March 4, 2017, through the date of his next appointment, November 20, 2017, at which time his prospective return-to-work date would be reassessed. (Tr. 1027). On January 3, 2018, Mummey completed a disability form stating that, based on his most recent visit on December 18, 2017, Quinn was unable to work from March 4, 2017, through the date of his next appointment, January 15, 2018, at which time his

prospective return-to-work date would be reassessed. (Tr. 1028). Following the January 15, 2018, encounter, Mummey stated in his treatment notes: "Patient unable to work at present time. Recheck 1 month." (Tr. 1038). The ALJ assigned "little weight" to PA Mummey's opinion, noting that, although Mummey was his treating provider, the physician assistant's periodic assessments were "self-limited in time" and did "not provide a specific, function-by-function assessment of the claimant's ability to perform work-related tasks transferable to a residual functional capacity assessment for disability." (Tr. 26).

The plaintiff contends that PA Mummey's opinion is entitled to "controlling weight" as a medical opinion by a treating source that is well-supported by the medical evidence of record. For the same reasons given above with respect to Dr. Mauthe's opinion, Mummey's opinion is not entitled to "controlling weight" under current regulations.[10] Moreover, we find the ALJ appropriately gave little weight to the *temporary* limitations articulated in Mummey's treatment notes and insurance reports, which are of limited relevance to a determination of whether Quinn is

_____

[10] As noted in the margin above, Mummey's opinion would not have been entitled to controlling weight under prior regulations either. *See supra* note 7.

permanently disabled. *See Samantha Jean S. v. Comm'r of Soc. Sec.*, No. 1:18-CV-03120-RHW, 2019 WL 7819478, at \*10 (E.D. Wash. Sept. 27, 2019) ("Medical opinions that assess only temporary limitations lasting less than 12 months are of little probative value."); *see also Damisha V.J. v. Saul*, Case No. 19-cv-02975-SK, Case No. 2:19-cv-00343-DBP, 2020 WL 7393976, at \*5 (N.D. Cal. Aug. 11, 2020); *Guillen v. Saul*, 2020 WL 1065741, at \*4 (D. Utah Mar. 5, 2020); *Smith-George v. Comm'r of Soc. Sec.*, Civil Action No. 10-cv-14531, 2011 WL 6000742, at \*11 (E.D. Mich. Oct. 27, 2011).

Finally, the ALJ accorded great weight to the prior administrative medical finding of Hong S. Park, M.D., a DDS medical consultant who completed the medical portion of Quinn's initial disability determination on July 24, 2017. Based on a review of Quinn's medical records, Dr. Park found that, notwithstanding his impairments, Quinn retained the ability to lift or carry up to 20 pounds occasionally and to lift or carry up to 10 pounds frequently, and to push or pull arm or leg controls subject to these same exertional limits. Dr. Park found Quinn was able to stand, walk, or sit for up to 6 hours each in an 8-hour workday, subject to the following postural limitations: frequent balancing, kneeling, crouching, or climbing

of ramps or stairs was permitted, but no more than occasional stooping, crawling, or climbing of ladders, ropes, or scaffolds. Dr. Park found no other physical limitations, and he concluded that Quinn retained an RFC that permitted him to perform light work. (Tr. 91–94). The ALJ assigned "great weight" to Dr. Park's administrative medical findings, noting that, although he did not examine the claimant, as a state agency consultant, Dr. Park had specialized program knowledge and an opportunity to review the claimant's medical records as they existed at the time of his review. The ALJ found Dr. Park's findings to be supported by and consistent with the overall medical record, in which Quinn's examining medical sources indicated normal gait, normal and symmetric reflexes, no motor or sensory deficits, and normal upper extremity strength.[11] (Tr. 25).

The plaintiff contends that Dr. Park's administrative medical findings should not have been given "great weight," but he has failed to articulate any specific defects in either Dr. Park's findings or the ALJ's

---

[11] Although the ALJ referenced only Quinn's upper extremity strength, we note that the same examination treatment notes relied upon by the ALJ also indicate normal (5/5) or good (4/5) strength assessments with respect to his lower extremities. (*See* Tr. 275–76).

consideration of them. The plaintiff argues only that the opinions of Dr. Mauthe and PA Mummey should have been given "controlling weight," which therefore would have outweighed Dr. Park's conflicting administrative medical findings as a matter of course. But for the reasons we have articulated above, the opinions of Dr. Mauthe and PA Mummey are not entitled to "controlling weight" under the current regulations, and the ALJ appropriately assigned little weight to both opinions.

Thus, the plaintiff's argument boils down to whether the ALJ erred in weighing the conflicting medical opinions or findings of these three medical sources. But in evaluating the medical opinion evidence of record, "the ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620. Moreover, "[I]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)(quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & n.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

## VI.   Conclusion

Based on the foregoing, we conclude that the Commissioner's finding that Quinn was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: April 29, 2021                    ***s/Joseph F. Saporito, Jr.***
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge